IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA


MCHOLME/WAYNESBURG, LLC, )
                Plaintiff, )
                               )
    vs.                                )    Civil Action No. 08-961
                               )    Magistrate Judge Amy Reynolds Hay
WAL-MART REAL ESTATE BUSINESS )
TRUST, )
                Defendant. )


MEMORANDUM OPINION

HAY, Magistrate Judge

      This diversity matter has its origin in a comprehensive development agreement made between the parties in March 2006. (Doc. 1 at ¶ 9). The agreement contemplated construction of a shopping complex on adjacent tracts of land in Greene County, Pennsylvania, one owned by the Plaintiff, McHolme/Waynesburg, a Pennsylvania limited liability company, and the other by Wal-Mart Real Estate Business Trust ("Wal-Mart"), a statutory trust organized under the laws of Delaware, with its principal place of business in Bentonville, Arkansas. (Id. at ¶¶ 1,2, 9). Building on the property has yet to begin. McHolme alleges that it completed site preparation in conformance with the agreement - and more besides - and is entitled to payment. Wal-Mart disagrees, contending that McHolme did not perform as promised, and, in fact, performed used fill that was "'rocky,' exhibited relatively high shear strength, and [was] placed without compression testing." (Doc. 7 at ¶ 25). According to Wal-Mart's consulting geotechnical engineer, continued settlement of the building pad which sits atop the fill makes it

impossible to say when, if ever, construction can begin. (Id. at ¶¶ 25, 36).

McHolme contends that the grading, fill, and pad construction were complete per terms set out in the agreement. Nonetheless, in October 2007, McHolme provided Wal-Mart with a written guarantee that McHolme would, at its own cost, remedy all of the work "which Wal-Mart determine[d], using reasonable business judgment, to be defective within one year from the date that all of the Sitework is deemed to be complete." (Id. at ¶ 24). Wal-Mart contends that McHolme, "[d]espite being contractually obligated to remediate, and its written guarantee, did nothing, and continued to insist that the Wal-Mart tract was properly prepared and certified." (Id. at ¶ 32). According to Wal-Mart, the scope of this inaction extended to McHolme's failure, contrary to the terms of the agreement and Pennsylvania law, to protect Wal-Mart from a subcontractor's lien claim filed against it for labor and materials expended in site preparation. (Id. at ¶ 40). Finally, Wal-Mart contends that McHolme communicated with "government officials" regarding the site work, and "shared confidential and/or proprietary information concerning Wal-Mart." (Id. at ¶ 28).

On July 9, 2009, McHolme filed suit alleging breach of contract. Wal-Mart responded with an Answer and four count Counterclaim (Doc. 7) alleging breach of contract, breach of warranty, breach of the implied duty of good faith and fair dealing, and requesting specific performance of the contractual provision protecting Wal-Mart from the lien claim. The Court addresses here McHolme's Motion to Dismiss Counts III and IV of the Counterclaim (Doc. 9). This Motion will be granted in part and denied in part.

Standard of Review

The Supreme Court, writing in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), held that a complaint - and, by analogy, a counterclaim - challenged pursuant to Fed. R. Civ. P. 12(b)(6) must be dismissed if it fails to allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570. The Court is not obligated to accept inferences unsupported by the facts set out in the complaint, see California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)), and is not required to accept legal conclusions framed as factual allegations. Bell Atlantic Corp., 550 U.S. at 564. In evaluating the viability of the Counterclaim, the Court must view all facts and reasonable inferences to be drawn therefrom in the light most favorable to Wal-Mart. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). With this standard in mind, the Court turns to the challenged counts of the Counterclaim.

Count III - Breach of the Duty of Good Faith and Fair Dealing

Count III of Wal-Mart's Counterclaim reads, in pertinent part:

> 51. The allegations of paragraphs 1 through 50 of the counterclaim are repeated, re-alleged, and incorporated here in by reference.
>
> 52. McHolme's refusal to accept responsibility for and repair the unstable building pad for almost a year, and *being contractually obligated to remediate*, constitutes a breach of the duty of good faith and fair dealing.
>
> 53. McHolme's refusal to, upon information and belief, immediately take necessary and appropriate action to protect Wal-Mart from [the] Lien Claim, *despite being contractually obligated to do so*, constitutes a breach of the duty of good faith and fair dealing.

(Doc. 7 at 13-14) (emphasis added).

3

The emphasized language establishes that Count III of Wal-mart's Counterclaim is essentially duplicative of its claim for breach of contract. McHolme contends that Count III of Wal-Mar's Counterclaim must, therefore, be dismissed because "a breach of the duty of good faith and fair dealing is a breach of contract claim, and is not a separate and independent cause of action." (Doc. 10 at 3). The Court agrees; this claim is subsumed in Wal-mart's claim for breach of contract.

Scholarly commentary has recognized that Pennsylvania law has been riven with "considerable confusion as to the nature of the covenant of good faith, when that covenant is implicated, and how claims arising from a breach of the covenant are enforced." Seth William Goren, Looking for Law in all the Wrong Places: Problems in Applying the Implied Covenant of Good Faith Performance, 37 U.S.F. L. Rev. 257, 258 (2003). As the parties' discussion of the law illustrates, it has not always been clear "whether the covenant is implicated in every contractual relationship or only some . . . and whether a breach of the covenant of good faith gives rise to an independent cause of action or is merely a tool of contract interpretation." Id. at 260. According to Goren this confusion "derived from confusing the contract-tort of bad faith[1] with breaches of the general covenant [of good faith] present in all contracts." Id. at 303. Whatever its source, this confusion has largely been resolved: "The majority of Pennsylvania cases through the 1990s to today . . . have refused to permit independent claims for breach of the covenant of good faith outside of an insurer-insured relationship. Thus, in general, a 'breach of such covenant is a breach of contract action, not an independent action for a breach of a duty of

---

[1]Wal-Mart does not argue that it intended to state a tort-based claim based on bad faith.

good faith and fair dealing.'" Id. (footnote omitted) (quoting Seiple v. Comty. Hosp. of Lancaster, No. 97-cv- 8107, 1998 WL 175593, at *2 (E.D. Pa. April 14, 1998) ("Pennsylvania does not recognize a claim for breach of covenant of good faith and fair dealing as an independent cause of action.")).

Recent case law confirms this as the prevailing rule in Pennsylvania. See, e.g., LSI Title Agency, Inc. v. Eval. Serv., Inc., 951 A.2d 384, 391 (Pa. Super.2008), appeal denied, 960 A.2d 841 (Pa.2008) ( citing cases holding that Pennsylvania does not recognize separate breach of contractual duty of good faith and fair dealing where that claim is subsumed by separately pled breach of contract claim.); JHE, Inc. v. SEPTA, No. 1790 NOV. TERM 2001, 2002 WL 101894,1 at *5 (Pa. Com. Pl. May 17, 2002) (" '[T]he implied covenant of good faith does *not* allow for a claim separate and distinct from a breach of contract claim . . . [A] claim arising from a breach of the covenant of good faith must be prosecuted as a breach of contract claim, as the covenant does nothing more than imply certain obligations into the contract itself.") (collecting cases from other jurisdictions adopting same rule) (emphasis in original); Commonwealth v. BASF Corp., No. 3127, 2001 WL 1807788, at *12 (Pa. Com. Pl. Mar.15, 2001) ("Pennsylvania law does not allow for a separate cause of action for breach of either an express or implied duty of good faith, absent a breach of the underlying contract.").

Federal courts construing Pennsylvania law have adhered to the same rule. See e.g., Chanel, Inc. v. Jupiter Group, Inc.,Civ. No. 3:04-CV-1540, 2006 WL 1793223, at *6 (M.D .Pa., June 27, 2006) (agreeing and citing cases holding that claim for breach of good faith and fair dealing is not independent cause of action, but part of a breach of contract claim); In re K-Dur

5

Antitrust Litig., 338 F. Supp.2d 517, 549 (D.N.J. 2004) ("Although Pennsylvania imposes a duty of good faith and fair dealing on each party in the performance of contracts, there is no separate cause of action for breach of these duties . . . .") (citations omitted); Blue Mtn. Mushroom Co., Inc. v. Monterey Mushroom, Inc., 246 F. Supp.2d 394, 400-01 (E. D. Pa. 2002) ("Pennsylvania law does not recognize a separate claim for breach of implied covenant of good faith and fair dealing."); McHale v. NuEnergy Group, No. Civ. A. 01- 4111, 2002 WL 321797, at *8 (E.D. Pa. Feb.27, 2002) (internal citations omitted) (same). The Court does not find anything in Wal-Mart's submissions that would cause the Court to depart from the law articulated in these cases.[2]

---

[2] In arguing that Wal-Mart cannot maintain both a breach of contract claim and a claim for breach of the duty of good faith and fair dealing, McHolme relies principally on the decision in Creeger Brick and Bldg. Supply Co. v. Mid-State Bank and Trust Co., 560 A. 2d 151 (Pa Super. 1989), a case which - given the widely recognized confusion that it has generated - does little to advance McHolme's position. In Creeger, the Court addressed the Plaintiff's claim that although the Defendant did not breach the terms of the contract between them, it nonetheless acted in bad faith. McHolme focuses on Creeger's statement that the duty of good faith "arises under the law of contracts, not under the law of torts," id, at 153, and on its citation of Section 205 of the Restatement (Second) of Contracts and the Uniform Commercial Code as adopted at 13 Pa. Con. Stat. Ann. Section 1203 for the proposition that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Id. Although this characterization of Creeger is correct as far as it goes, the Creeger Court went on to find that the duty of good faith and fair dealing applied only in limited situations, to litigants in a special relationship, such as a franchisor and franchisee, or an insurer and its insured. Creeger did not address the situation that exists here - where a plaintiff seeks to maintain both a breach of contract action and a claim for breach of the duty of good faith. The Court in Creeger seems to have conflated a tort-based bad faith claim and a contract-based breach of good faith claim.

The cases cited by Wal-Mart in favor of its right to maintain both claims are also problematic. The Court in Bedrock Stone and Stuff, Inc. v. Mfrs. and Traders Trust Co., No.04-CV-02101, 2005 WL 1279148 (E.D. Pa May 25, 2005) did not have before it a contract claim and a good faith and fair dealing claim, and did not address whether a plaintiff may maintain both. To the extent that Creeger had held that the duty of good faith and fair dealing is inherent in some contracts and not others, the Court in Bedrock declined to follow Creeger. The Court then considered whether a plaintiff *who did not allege breach of contract* could nonetheless pursue a claim that discretion reserved to the Defendant

6

Count IV-the Request for Specific Performance

McHolme contends that Count IV of Wal-Mart's Counterclaim must be dismissed because "a prayer for specific performance is not an independent cause of action, but rather, is a remedy for an alleged breach of contract." (Doc. 10 at 4). In support of this contention, McHolme cites Glenn Distrib.Corp. v. Carlisle Plastics, 297 F.3d 294 (3d Cir. 2002), a case which deals with a buyer's duty under the Uniform Commercial Code to "cover" upon the seller's breach of a contract to buy specific quantities of merchandise. This case says absolutely nothing about whether a claim for specific performance may be construed as an independent cause of action.

While the Court has located a case which *does* stand for the proposition stated by McHolme, see Invensys Inc. v. Am. Mfg. Corp., Nos. 00-2710, 00-2790, 2005 WL 600297, at *9 (March 15, 2005), ("[S]pecific performance is not itself a claim, but rather an equitable remedy available to a party who was damaged by another's breach of contract and has no

---

under the terms of a contract was exercised in bad faith. Again, this case might fairly be characterized as a tort-based bad faith claim. The decision in Phila. Plaza-Phase II v. Bank of Am. Nat'l Trust and Sav. Ass'n, No. 3745 APRIL TERM 2002, 2002 WL 1472337 (Pa. Com. Pl. June 21, 2002) presented an issue similar to the one raised in Bedrock. The Court in Phila. Plaza described the Creeger line of cases holding that the duty of good faith applied to a limited number of contracts as "aberrant." Id. at *3. The Phila. Plaza Court concluded, however, as the Court in this case does, that the implied covenant does not extend to any matter covered by the terms of the written contract between the parties. Id. at 5. The action in Phila. Plaza was allowed to proceed where the contention was that the defendant had exercised discretion authorized by the contract in an unreasonable way; *there was no breach of contract claim*.

     The Court agrees with Wal-Mart's assertion that the decision in Creeger has been criticized, misinterpreted, and overextended. See Goren, (observing that much of the confusion in the law regarding good faith and fair dealing has its origins in Creeger, which has been "misconstrued" by "many later cases.") 37 U.S.F. L. Rev. at 283. The Court's analysis here, however, does not depend upon Creeger, or, for that matter, on the Bedrock and Phila. Plaza holdings.

adequate remedy at law."), it does not find that this case mandates dismissal of Count IV. It is clear that what Wal-Mart seeks in Count IV of its Counterclaim is specific performance as a remedy for the alleged breach of a lien-related clause in the development agreement. It is also clear that Wal-Mart will not be entitled to this remedy unless it is able to establish that McHolme breached the agreement, and that there is no adequate remedy at law. The Court will, therefore, construe Count IV as a request for an equitable remedy for breach of contract.

Conclusion

For the reasons set out above, McHolme's Motion to Dismiss Counts III and IV of Wal-Mart's Counterclaim (Doc. 9) will be granted in part and denied in part. The Motion will be granted with respect to Court III and denied with respect to Count IV. An appropriate Order follows.

/s/ *Amy Reynolds Hay*
United States Magistrate Judge

Dated: 7 May, 2009


cc: Counsel of Record via CM-ECF